Good afternoon. Please be seated. We're here for the impact of the argument on Haskell v. Harris. Judge Gould is appearing on video. Good afternoon, Judge Gould. Can you hear me? Good afternoon. You're coming through loud and clear. Are we coming through? Great. I can hear you fine. Okay. Counsel ready? Okay. You may proceed. Good afternoon. Michael Rischer for the Plaintiffs' and Appellants. I'd ask to reserve five minutes, please, for rebuttal. If you have the clock, you'll have whatever's left over. May it please the Court. This case is fundamentally different from King because California's law applies fully to people who are never charged with a criminal offense and to those who are discharged for want of probable cause under McLaughlin and Gerstein. None of the interests that King identifies can justify taking DNA from these individuals who are not being prosecuted, because all of King's interests relate to tracking and monitoring people as they progress through the criminal justice system up to trial. Counsel, I respect the sincerity of your view, but the reality is that the Supreme Court said in King that DNA was like fingerprinting. If all of the things that you say about your particular clients are true, they would still nonetheless be fingerprinted and their fingerprints retained in a national database just like the DNA. How do you distinguish that? I mean, the Court made it very, very clear several times that DNA and fingerprints are of the same ilk constitutionally. The only difference is one is a more modern technology. Well, that's not how I read the case. Fingerprints are different from DNA. Fingerprints tell us nothing about ourselves. DNA is, regardless of what the government's doing with it, our genetic blueprint. Fingerprints have a history in this country of being used to, in the narrow sense of the term, identify people. They do an excellent job of that. People who are arrested can be identified, again, in the narrow sense of the term, within minutes using their fingerprints. None of this is true with respect to DNA. And if the Court had simply wanted to say there is no problem with using DNA any time that our system wants to use fingerprints, whether it's in the criminal justice system, whether it's in applying for a driver's license, whether it's applying to be a member of the bar, it could simply have said so. Instead, King, as was required by Kilo in other cases, engages in a new totality of the circumstances balancing test, and only after doing that decides the DNA can be appropriately used in certain circumstances. Alito, are you challenging the initial taking of the DNA or the subsequent use? Because it seems to me that at page 21 of the Supreme Court's opinion, the Court wrote the additional intrusion on the arrestee's privacy. Beyond that, associated with fingerprinting is not significant. And DNA is a markedly more accurate form of identifying arrestees. I read that to mean that it is perfectly okay to take the DNA at the time of arrest, which is what happened to Mr. King in the as part of the booking process. So isn't your argument really what the police do subsequent to the taking of the sample? Yes. Under King, the government may take DNA at arrest for people that is arrested for serious crimes. However, it cannot analyze or otherwise use that DNA unless formal charges are filed and there is a judicial finding of probable cause to believe that the defendant is in fact guilty of a serious offense. You say that it has to be a serious crime, but the examples that Justice Kennedy used were making the point about utility of DNA was the 9-11 terrorist and Timothy McVeigh, both of whom were arrested or picked up, stopped on very minor charges. It seems the thrust of the majority opinion is that DNA, no matter how it comes into possession of the government in terms of an arrest, is an incredibly valuable tool. And I know they use the term serious offense, but it's a little hard to understand the rationale of the majority opinion being limited to just serious offenses when they make the point using two examples of non-serious offenses. They do, but of course the reference to McVeigh comes from a quote from Florence versus Board of Freeholders. I think that the significance of that quote is that, yes, the police may be dealing with seriously, with serious criminals even if they're only encountering them in a traffic stop, but I don't think that King can be read to allow the police to take DNA from every jaywalker or speeder. Kennedy, that's not what Justice Scalia indicates, is it? He's the dissent, of course, but the way he reads it, he says at page 1989, when there comes before us the taking of DNA from an arrestee from a traffic violation, the court will predictably and quite rightly say we can find no difference between this case and King. Make no mistake about it, as an entirely predictable consequence of today's decision, your DNA can be taken and entered into a national DNA database if you are ever arrested rightly or wrongly and for whatever reason. He was in the conference. He heard what the majority decided, and that's how he reads it. How can we read it otherwise? Well, I think it's fair to say that Justice Scalia and the majority read the Fourth Amendment and the interests involved in this case quite differently. Well, I agree, but the reality is Justice Scalia was interpreting the majority opinion, which is, of course, what controls us here, as just what he said. And if he is correct in his construction, then you're out of luck, are you not? No, because the fundamental distinction between this case and King goes not to the seriousness of the offense. The fundamental distinction here is that California is taking DNA from people who are discharged for want of probable cause. But he says that it doesn't matter whether they're ever arrested. He says if you're arrested rightly or wrongly and for whatever reason. So I would respectfully suggest that I don't see how you can justify your part. I get your other point about what's done with it afterwards, but I don't see your point about the seriousness of the offense or anything of that nature, because Justice Scalia makes it very, very clear what the majority meant here. And it's not what you mean. Could you clarify one thing as you answer this? Yes. In King, is it – I understood the situation to be that they could only collect the sample after the individual had been charged, as opposed to just simply arrested. Is that right? That's an ambiguity in King. Yes, King repeatedly says that. That was the question presented. But if you go to the regulations that the State's Attorney General issued in King, the State's Justice Department, they talk about charged, and they define charged as the filing of a ticket, like issuing a ticket or a complaint or an information or something. But they do seem to draw a distinct – and in California, as I understand it, your DNA can be taken if you're simply arrested, taken down to the station, booked, and then kicked out the door because the cop has determined that no crime was committed. Is that right? That's absolutely how it happens in California. And King is ambiguous because it did talk about people formally charged, but it also didn't talk about taking DNA at booking. I believe that under King, DNA should only be taken from those people who are actually charged with an offense. Those are the only people who will progress through the criminal justice system. But I do appreciate that the government does have some interest in taking DNA before then, even if they can't use it in case the person fails to appear. I don't think that those interests are weighty enough to justify taking it at booking and then using it. I thought the distinction was that you're being correct that it's part of the booking process, but I thought Maryland wouldn't process it. Correct. It's still charged, so there's the taking of the sample, and then there's the profiling that comes by going after the limited identifiers, the junk DNA aspect. That would be a distinction from California because California processes it right away. Well, not right away. In other words, they don't wait for a charge. Correct. And that is the fundamental distinction. May I ask you about that distinction, though? And this may be because the Supreme Court wasn't clairvoyant in looking at the situation we have in front of us. But if you go to the end of the opinion of the court, or actually the court on page 23 of its slip opinion, it keeps talking about in sum there's little reason to question the legitimate interest of the government when it's talking about, quote, the identity of the person arrested, and then it goes on later to talk about identification of arrestees. What do we make of that language as you fold it into the California statute? Well, the first time the court talks about the identification of arrestees, it's, quote, again from Florence, I believe, or maybe from Hibble, where it says in every criminal case it's necessary to know who's been arrested and who's being tried. When we're talking about identifying arrestees, it's talking about arrestees who are being prosecuted, because everyone in Maryland who was given the DNA sample was necessarily being prosecuted. And in California, it's important to remember that for the population that I'm most concerned with, those who will not be prosecuted at all, that decision may have been unconditionally released from the criminal justice system within 48 hours, within 72 hours, usually three business or two working days. That's long before, under California's system, the samples will even get to the lab. They're mailed to the laboratory. So what they're talking about when they're talking about arrestees is they're saying, as I read the Supreme Court, you have an interest in knowing, for example, if they're wanted elsewhere. So if you have an arrestee who ultimately is not charged, but isn't there an intervening interest of knowing if that individual is wanted elsewhere, having been arrested? No. I think once the person who, once the decision is made not to prosecute, once that person is unconditionally released, as was the case with respect to three of our plaintiffs, that interest is no longer there. But even before being released, the Supreme Court seems to acknowledge that there is a government interest in knowing if that person is wanted elsewhere. Isn't that inconsistent with your argument? I don't think so. I mean, first of all, fingerprints are how that determination is made. Whether somebody is wanted is not done with DNA. Whether someone might be implicated in a different crime is something that can be done with DNA. But not just with the current technology, but with California's current infrastructure and, perhaps most importantly, with the current CODIS protections for privacy, that determination cannot be made in time to be meaningful for people who are arrested and then released before arraignment or at arraignment. Because, remember, this Court recently in this Court recently in this Court recently There was Thorn King, too, wasn't there? Well, I mean, everything you say was Thorn King. So and as Judge Smith pointed out, Justice Scalia pointed that out in dissent and didn't carry the day. So where are we? You know, you started by saying this case is different and all the interests all the interests, many of the interests in King don't apply here. Justice Kennedy conveniently lists them by number in the opinion. And I want you to just go down the list one by one and tell us which ones apply there that don't apply here. It starts on page 11 of I guess that's 569 U.S. Reports, page 11 of the opinion. It says first, and it goes on and lists them. And, you know, can we just go down quickly one by one and see which ones don't apply? So first one, it says there is a need to know that this is the right guy. This is the right person, right? That applies just as well here as it did in Maryland, right? No, I don't think so, because it starts off in every criminal case. If there is no prosecution, there is no criminal case. If you have just someone who was arrested once but has now been unconditionally released, the government doesn't have that same interest. Well, but that was Thorn King, too. I mean, that was true, and nevertheless, they said they could take it. So it says an individual's identity is on page 12. An individual's identity is more than just his name and social security number, and the government's interest in identification goes beyond ensuring that the proper name is typed in the indictment. True here, right? That part is true. So then we've got second on page 13. Law enforcement officials bear responsibility for ensuring that the custody of an arrestee does not create intolerable risks to facility and staff and so on. And equally true here as in King. Not with respect to the people that I'm talking about specifically, because by the time Mr. King was in custody long after his DNA had connected him to this rape, by the time DNA results could help law enforcement in California know what someone has done in the past, whether this person might be dangerous, the people I'm talking about here, they're not in custody. There's no need to make bail determinations for them. They've been unconditionally released. They are free people. Lily Haskell was within six days of being arrested, issued a certificate that says no charges are being filed. Her DNA being tested 31 days later did not help the jail deal security issues. She wasn't in jail. But this raises a question. You brought a facial challenge. Yes. And you're now ratcheting it down to an applied challenge as to members of the class? In light of King, yes. Okay. And so what is just defined for us? What is the class or what is the – how do you define the people to whom this lawsuit applies? Well, the class has already been – It hasn't been certified, right? Yes. It was certified on January 29th, 2010. So that – but that class is gone, right? Because that class is – Well, I don't know whether – That class encompasses everybody who's arrested.  law that's before us. Okay. So then you have to talk about everybody. And in that case, that brings us to this is just like King. You can no longer talk about your people, your particular individual name plaintiff. She has to talk about the class. The class applies to everyone to whom the statute applies. And in that respect, the second thing here, the second interest is just like in King, right? Well, I mean, there can be subclasses, and Judge Breyer did keep open the possibility of creating subclasses. But the fact that there's a class that includes everyone does not mean that everyone in the class is entitled to relief. Whatever rule – here's the rule I'm asking for. California can take DNA from people it arrests for a serious offense. It cannot do anything with that DNA unless there is a prosecution and a judicial finding of probable cause. Absent one of those or if charges are dismissed, it should destroy the sample, expunge the profile. But, counsel, you've made that point in your brief. This case is really unusual in this respect. You and your co-counsel filed a brief with the Supreme Court in which you actually argued Haskell to the Supreme Court, 12 different points, including the ones that you make to us today. What impact, if any, does that have in our analysis whether the Supreme Court heard your argument and what they said, how that applies? For example, in the fingerprint analogy, everything you said about your plaintiffs would likewise be true of fingerprints. They get fingerprinted. Those fingerprints stay in the database, whether or not they were charged, whether or not they're released. And as Justice Scalia pointed out, the traffic accident, whether or not people were charged. I'm having difficulty understanding how you can carve out from what the Supreme Court said your particular people, particularly when you have literally argued Haskell v. Harris to the Supreme Court in Maryland v. King. You made those arguments. The Supreme Court never mentioned Haskell. No, they didn't. And I never mentioned our cases unless they're reversing this. Well, they did mention other cases that it upheld or it struck down DNA testing of arrestees. I don't think that Article III courts secretly reach out to decide other cases, and I don't think you can judge that based on the fact that they were aware of it. I'm not saying you're deciding this. I'm simply saying that they heard your argument, the very ones you're making to us today, despite your desire that they would go in a different direction. Justice Kennedy's opinion, which the Chief has just mentioned and started going down those points, and Scalia's interpretation of that, it seems to me that this distinction that you're making on an as-applied basis can't possibly hold water. It's just this is like fingerprinting. Your people don't get removed from the fingerprint base. They don't get removed from the DNA base. Well, I don't know that the Supreme Court addressed the issue you're presenting here, because in this case, California does not automatically destroy the samples once there's no charges are filed. So at least that part of the process is different. Could you address that? You mentioned that that was what you're concerned with. It is very different, because in Maryland, as soon as charges were dismissed or if there was no judicial finding of probable cause, the sample would be destroyed. It would not even be analyzed. In California, it's very different. Even if a judge says there is no probable cause to think that this person committed an offense. But that's another case for another day. If somebody comes in and says, look, I've been acquitted, my DNA is still in the database. I would like to bring an action on behalf of myself and all similarly situated to have that information expunged, then we'll take that up. That will be a case. That will be an interesting case, which I'm sure, you know, I don't know what the outcome of that will be. But why is that something that you decide now in a pre-conviction case with a class that you've practically admitted is too broad? Why isn't the right thing to do here, if not affirm, perhaps that's the right thing, but at the very least, why don't we need to send it back for you to reformulate a class? Because there's no need to reformulate the class. This case would be just this. Well, you do concede that there are some people in your class, perhaps quite a great many people, that are just like King in every way. Yes.  And they lose. Yes. How can we have a relief that's afforded to a class when you yourself admit that some of the people in your class don't get the relief? Because we're not a district court. We can't reshape classes. At least, I don't think we can. But what this Court can do is announce the correct rule of law, and the district court can then apply that. It will be res judicata. The entire class is important, because it's res judicata with respect to the entire class. Those people who lose under the court, the rule that this Court announces, lose. They're bound by that because they're class members. So the proper remedy isn't to redefine the class. That would be unfair to the government. The proper remedy is for the district court to enter an injunction that implements the constitutional rule of law that this Court announces. And how would you articulate that group of people? How would you say? Who are these people? Who are the ones that win and who are the ones? We know the ones that lose. They're the ones just like King, right? Who are the ones that win? I would ask that the district court issue an injunction prohibiting, with respect to all class members, the State of California from analyzing or otherwise using DNA taken under these provisions until formal charges have been filed, and there is a judicial finding of probable cause to believe that the person whose DNA is at issue has committed a serious offense. But you want us to rewrite the statute? No, not at all. For the legislature. I want an injunction that simply says that in implementing this statute, the State cannot violate the Fourth Amendment, and injunctions, of course, have to spell out what is prohibited and what is not. Is there any evidence in this record that Ms. Haskell has petitioned to remove her DNA sample from the system? No. But there is a statutory remedy to permit her to do that, but she's not availed herself of that remedy. There's a discretionary statutory remedy, but there's no exhaustion requirement under Section 983. But she hasn't pursued it, so we don't know what the response would be. If the State said, yes, we'll take your DNA sample out of the CODIS system and destroy the sample itself, then she'd get all the relief that she's entitled to, would she not? If, in fact, that were to happen, yes. But that would be imposing an exhaustion requirement. There's only an exhaustion requirement for 1983 suits under the PLRA. That doesn't apply under Patsy v. Board of Regents. I'm sorry, not one we cited in the briefs. That would be imposing an exhaustion requirement. I don't think that's appropriate here. Kennedy, would your argument also apply to fingerprinting? Could you bring a lawsuit claiming that fingerprints that were taken from the same people that you just described are likewise unconstitutional? Because people were released, they were never charged. You've got this record that remains there after this occurs. The Supreme Court said fingerprints and DNA are constitutionally the same for purposes of this setting. How can you distinguish between those two? Well, I don't read the cases saying that they're the same. They share many common characteristics, but it's just a factual matter. They're different. They're different technologies. Under footnote 2 of KILO, we have to analyze them differently. We could bring that suit, and the analysis would then be whether fingerprinting – what are the interests there? And the interests in fingerprinting are substantially different. Fingerprinting is supported by history. It's not at all – it doesn't tell you anything. You can't do familial searching with fingerprinting. You can't do anything with fingerprinting other than a demonstration in our research. But you're talking about abuses of the statute, and you have no evidence that it's been abused. Justice Kennedy started with the bodily examinations, and then they went to photographs, and then they went to fingerprints, and now they go to DNA. It's a different technology. But he said constitutionally that the same analyses applied. So what I'm puzzled about is how you can say that when there's no evidence of DNA abuse in this case, you can distinguish between an ability on your part to strike down a statute that allows the collection of DNA from people who have not been charged and are released within 48 hours, no bail and so on, and not apply the same thing to fingerprinting. Because DNA and fingerprinting differ in the ways I just mentioned. And let me put it this way. There are three additional reasons. First of all, I believe that the retention of the DNA sample in the profile is a continuing infringement on Fourth Amendment liberty, different from fingerprints. Also true of fingerprint? They keep them. They're in a codice, if you will. It's not called a codice, but they're there. And they periodically run them against the automated fingerprint identification system to see if it matches any latent prints taken from new crimes that have been entered in the system. I don't think the ridges on one's fingertips raise the same constitutional issues as retention of the sample and the profile that can be used. Admittedly, it's not being used in California right now with respect to the arrestee database, but can be used for familial searching. That's something that categorically distinguishes it, maybe not how it's being used now, but what it is from fingerprinting. Kagan. Well, let me ask you in a more concrete sense. You're drawing the line at the judicial issuance of probable cause. Is that correct? That's one of the lines, yes. Okay. That and the charging question. Charging or judicial determination. Yes. Okay. So assume somebody gets arrested and the complaining witness flakes or something happens and the person is released. So there's no immediate charge. But then there's a hiatus. Under your line drawing, although the DNA was collected at the time of arrest, the law enforcement could not utilize that DNA in any way. Is that correct? Not until there was a charge under some sort of judicial finding of probable cause. So in other words, even though arrested, let's say they may have been arrested on a rape, and then there's a hiatus and there needs to be more investigation, they're not ready to charge. And they're not detained, so they don't need to be taken before the court. You're saying that even though the DNA is now in the hands of law enforcement and you potentially have a complaining witness on a rape, that the government is precluded from making that match, correct? No, I'm not saying that. Because in that situation they haven't been in front of a judicial officer and there's been no charge yet. In that situation, the government has several options. If there's semen left at the crime scene, there would necessarily be probable cause to get a warrant to test that sample. Or under California law, Section 817 of the Penal Code, they could get what's called a Ramey warrant. That would also be an arrest warrant pre-charging. That would also be a rape. There could be alternatives, but having alternatives doesn't make necessarily a third alternative unreasonable or unconstitutional. So the question I'm asking is kind of a yes-or-no one, and that is, if you have this rape situation that I laid out, does this mean that the officers are precluded from using that DNA sample for further investigation? They're precluded from using this law to test that sample. They're not precluded from using any of the other alternatives that they have, which are less intrusive in a general sense. Ginsburg. What's the difference between this law and the others? I mean, just because it's less, again, what's your response to what seems a logical question, and that is, simply because there might be other alternatives doesn't make this one necessarily unconstitutional. Why couldn't they use the DNA under this law? It's not reasonable. And the availability of less intrusive alternatives, it's not dispositive. It is a relevant factor. This Court has said so repeatedly. Kagan. But let's say we don't have a rape situation, but we have the DNA, the arrestee is let go for whatever reason. They now run the DNA through the database, and they say, voila, this actually this individual is wanted in Maryland for rape, murder, and three other serious crimes. Could they or are they also precluded from making that match because the person has not yet had a judicial probable cause determination? Well, just to be clear, they're not going to find out this person is wanted in Maryland. They might find out that this person is implicated in an unsolved case in Maryland. Correct. If he's wanted, then this won't help him do that. Fingerprints will, but this won't. Well, no, but the thing is, but that's the point, is that finger, in other words, if they run up through the CODIS, they might find out there's a warrant out in Maryland or they might find there's something else. But since fingerprints, according to the Court, the Supreme Court, are really the same as the DNA, you're simply saying, well, they are stuck to the fingerprint alternative. They can't use this alternative. I just want to understand where you're drawing the line. CODIS will not help them find an outstanding warrant. CODIS will only help them find an unsolved crime and connect it to that after this confirmation process. Okay. So if there's no standing warrant, they can find that. But that interest in simply connecting someone who's been released without charges, connecting him to an unsolved crime in Maryland, that's the government's interest in solving cold cases that the Supreme Court refused to accept in King. The majority opinion never lists that as a legitimate reason to take DNA from someone without a warrant. And that's remarkable. That was the government's main argument. That's the basis that Chief Justice Roberts used. Thank you. Your time. Thank you. Thank you very much. We'll hear from the appellees. Good afternoon. May it please the Court. Enid Kamps for appellees. DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. This is the holding of the United States Supreme Court in Maryland v. King, and this holding is broad and unequivocal. The Court does set parameters in the very next sentence of its opinion. When officers make an arrest supported by probable cause to hold for a serious offense, and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is like fingerprinting and photographing a legitimate police booking procedure that is reasonable under the Fourth. In King, the probable cause determination was made by the Court. Yes. Is that right? Probably. Is that the case here in California under the statute we're dealing with? No. When it's for arrest? No. Maryland takes the law, takes a sample after booking and before and analyzes it only if there's a judicial finding of probable cause. So in our case. In charge. Under our statute, somebody could be arrested by a police officer for a felony out in the field. Because they're arrested for a felony, they have to be taken into the station and booked, correct? Correct. All right. And for whatever reason, the arresting officer may ultimately decide that there's not enough there and just release the defendant, correct? Correct. He could also release the defendant prior to any booking, after interviewing them. Well, it takes them down to the station. As I understand the California statute, at that point, they could request and demand DNA sample. At booking. Yes.  And that's exactly what Maryland v. King permits. But there's no been no judicial determination of probable cause at that point. No. None of the factors that the appellant identifies are part of the holding in King. There's no formulaic list. But the Court says a valid arrest based on probable cause. So that's sort of the premise of the ruling. And as Judge Paris points out, in that case, that wasn't subject to challenge because there had been judicial determination. Now we're dealing with our case, or cases in our State, where there is no such determination. So the very sort of premise, the basis of the Court's opinion, the starting point, is in doubt. So I'm interested in answering this question. Since the – I take it when somebody is arrested, just from all the movies I've seen, I take it they take them down to the station, they fingerprint them, and they take a picture before anything else happens, right? And now they take the DNA sample. Now they take the DNA sample. Right. So it would be at that point, right? So at that point, there haven't even been charges filed. No, because taking – No, I'm just – Yes. There's nothing to – there's no but about it. I'm just asking factually how it happens. So at that point, there haven't been charges filed. It's entirely possible, and I'm sure it does happen, that somebody is taken down to the station, booked, fingerprinted. The matter is – the police officer consults with the DA, and the DA says, no, you know, here's the reasons, we're not going to charge this guy. You know, either, you know, we're not enforcing these, there are too many, you know, whatever. And they decide to let him go. It must happen, right? That's one of many options available. But not the only option. I'm sorry. It's not an option. It's a factual scenario. It's possible, right? It's a possibility. One of the things could happen. But there are a variety of things that can happen at that point. Of course. They could say, we're going to book him and slam the door. Of course. But it is possible that nothing will happen, that there will be no charge. It's possible that I'm consulting with the DA. The DA will say, no, we're not going to press this as a felony. We're going to treat it as a misdemeanor. That's also possible, right? It's possible. Okay. It's also possible the DA will say, look, tell me a little bit more about that arrest. Sounds to me like the arrest was illegal. We're going to let him go because we, you know, we don't want to get into a dispute about the legality of the arrest. All that's possible. Now, I take it under California law, at that point, the cheek swab will have been taken and the State is entitled to analyze the sample, right? That's correct. But the Supreme Court said no. None of those cases were dealt with by the Supreme Court because they assume probable cause and a valid arrest as a premise for their opinion. I mean, that's a fact, right? I don't think that that's the case. I mean, the holding is very broad. When there's an arrest on probable cause and you've brought the individual to the station. We can argue about what the holding is, but just as a factual basis, as a premise, the Court there was dealing with a situation where all the cases I've discussed are not included. The cases where the DA decides the arrest is bad, you know, they didn't have a warrant, you know, whatever, all those cases were not presented by the Maryland statute. Correct. But the Court set the time for collection at booking because the information that is available after booking can inform the charging decision. And so in that scenario, the charging decision isn't finished. The charging decision is still under review and subject to the information that is returned from the identification information that's obtained at booking. Let's take the example that the Chief just gave and substitute fingerprinting for DNA. Let's assume that someone is arrested in a traffic matter. They're brought to the station. They're fingerprinted. They're booked and the DNA is taken. But as the Chief suggests, the DA says, no, this is kind of weak. I'm not sure we had probable cause. Are fingerprints removed from the database because that occurred? No. They remain in the database and they're not expunged. Do you know of any State or the Federal Government that has an expungement statute for fingerprints? California does not have that process. Even on an invalid arrest, the fingerprints remain in the fingerprint database. This is part of what Justice Kennedy referred to that it was reasonable under the Fourth Amendment, is it not? Yes. Because it's part of the booking process. Correct. And so DNA at booking is the functional equivalent of fingerprints, and that's what the Court recognized. Well, that may be so, but that is not, in fact, covered by the opinion. It may be followed logically from what the opinion says. Is there a case talking about expungement of fingerprints that the very question Judge Smith asked you about? Is there a case saying that has actually litigated the question of whether or not fingerprints need to be expunged? I don't think there is. There are California State cases. Yes, but who cares? For the individual, as a matter of Federal and State law. We care as a matter of, I mean, I'm not saying we don't care. I mean, as a matter of Federal law, as a matter of State, I mean, who cares about what State law provides, we're talking about Federal law. Federal law also has a retention policy. Sorry? The Federal law also has a retention policy. No, no, I'm asking as a matter of Federal, has the case been litigated as a Federal constitutional matter? I thought you were saying, yes, there are State law cases dealing with it, and that's fine. But are there cases dealing with the Federal constitutional question of whether or not there is retention of, I mean, there's a practice of retaining fingerprints. There's no doubt about that. And I think most of us gave up fingerprints when we became members of the Bar. And the bench. I'm sorry? And the bench. Well, that was sort of voluntary. We could have said no, I suppose, yes. I gave out ten, ten fingerprints sets. They couldn't get it right for me. But, yes, that's right. We all give up fingerprints. But is it any case dealing with whether or not the State is entitled to keep fingerprints if it finds somebody totally innocent or totally that the rest was illegal? I think that there are processes pursuant to probably to Federal law and State law where an individual can apply to have their arrest records expunged if they're found factually innocent. And I'm not sure whether or not that would encompass the same kind of expungement. I think, as far as I understand it, fingerprints are retained indefinitely and remain in the State and Federal database. If we deal with another issue besides just when one can keep the particular DNA sample, we deal upon when one can get rid of it. In Maryland, all samples and profiles are immediately destroyed if all qualifying criminal charges are determined to be unsupportive. But in California, quite opposite occurs. In fact, even if someone wants to have his DNA sample destroyed, he must send a request to the court, to the DNA laboratory, and to the prosecuting attorney. Right? And the court has the discretion to expunge. And then if the court doesn't expunge, then denial is unappealable. Isn't that correct? The process that is, that's not a full description of the expungement process. Oh, I didn't expect it to be full, because I haven't got all day to give it to you if I had to read the statute. But the bottom line is, this is expunged only when the court has discretion, and if the prosecutor says no, often it doesn't, it cannot happen. That's a very limited reading of that procedure. What the statute actually provides. Tell me then, it seems to me there's quite a bit of difference between automatic expungement on one side and going through the process and maybe get it done on the other side. And therefore, is that not a difference we ought to take into effect? That's my question. It's not a difference of constitutional significance. Why? Because there is a valid procedure for an individual to have his DNA sample expunged from the State's database. In fact, there is an expedited procedure for doing it, and California has done it within two to four weeks. That's its average time. And so California modeled its expungement process on the process for expunging arrest records. But that is different than Maryland, correct? It's different. And it is so that the Court has a discretion in California, where in Maryland there's no discretion whatsoever. And in California, if the Court says no expungement, there's no appeal. And in Maryland, it's automatic expungement. There are statutory criteria for the judge to follow in the expungement provision, and we'll assume that the judge will follow those provisions. There's a hearing only to allow the Department of Justice to come in and say if it hasn't already expunged the sample, look, this individual is qualified otherwise to have his sample remain in the database because he's a registering sex offender or a registering arson offender. And so it just gives the – in the event that DOJ doesn't expeditiously expunge the sample pursuant to its own procedures, there's another forum for the individual to say, no, I meet this criteria. And so it is – And the judge could just say no, and that would be it, right? That's hard to imagine that the judge wouldn't apply the statutory criteria that's listed in the statute to decide whether or not to expunge the statute. Is that a yes? I didn't hear you answer my question. The judge could say no, and that would be the end of it. True or false? Correct. That's a nonappealable decision. I'm sorry? That is a nonappealable decision. There wouldn't have to be an explanation. You wouldn't have to know why. We would assume that the Court would follow the statutory criteria. You can assume anything you wish. The fact is you wouldn't know. Is there anything in Justice Kennedy's opinion that cabins his analysis about the reasonableness of the use of DNA in the booking statute to an ability to expunge the DNA if the person were found innocent? No. It didn't even enter into his thinking, did it? It didn't, because it's not the difference of the two. Are you going to speculate on what Justice Kennedy was thinking when he wrote an opinion? There was automatic expungement and there may have been no cause to address the issue. Are you going to speculate on what he was thinking? I think the opinion is a very broad opinion. The Court was well aware of the difference in expungement procedures. It was aware of the difference between California's law and Maryland's law. And as Your Honor pointed out, we told the Court of the differences in California law, and the ACLU told the Court of the differences in the California law. And the Court was concretely aware of the particulars of California law more than any other State. And decided the case based on Maryland law, it didn't say, and we also cover these other statutes, and by the way, our rule is broad enough to cover anything other States may do. It's a, you know, typical Justice Kennedy opinion that's no, no. I mean, he's very careful, common law kind of guy who takes a case in front of him and decides that case. I mean, that's how he does, that's how he writes his opinions. This was an intentionally broad opinion. But counsel, he kept putting into his broader statements the foundational aspects, one of which included that there was automatic expungement. That appears nowhere in the opinion except in the recitation of Maryland law, which was dropped at that point. What it is clear is that the Court intended to set a national standard. It was aware that 28 States and the Federal Government have laws similar to Maryland. It acknowledged that the State laws vary in their particulars, and that's their word, and it recognized that its holding goes beyond those particulars and, quote, implicates more than specific Maryland law. Could I also reference you to some other language, which I've grappled with this problem all the way through this. But it seemed to me that Justice Kennedy said statutory safeguards on use are enough, that a statutory, and I quote, or regulatory duty to avoid unwarranted disclosures generally allays privacy concerns. Avoiding unwarranted disclosures is more important. It seemed to me that was his approach. Would you agree? His approach, he recognized the statutory and regulatory safeguards, that those safeguard individual privacy, and that is the linchpin of the decision, is the CODIS regulations that standardize these procedures, and that was the reference that the Court in other parts of the opinion explained, that these use and confidentiality restrictions in the law make the invasion of privacy minimal. So it's those factors. CODIS does require expungement. So the factors would be weighed differently if some of those restrictions weren't in place, hadn't been in place. Right? I mean, let's say, for example, Maryland took all of this information and put it online where everybody could reach it, sort of like the sex offender registry. And the balance would have been different, right? No. Just because no, no, the balance is just no. No, because the Court weighed the constitutionally significant issues in this case, the government interest. And one of the interests was, I mean, on the one hand was the government interest, and on the other hand was the intrusion on the individual. And you don't think it would weigh differently if the intrusion on the individual had been much more serious, if, for example, the coding had been done on non-junk DNA, it had been done on DNA that you don't think that the weighing would have been different? Yes. It recognized that as one of the significant factors, that the intrusion is minimal. So why aren't the privacy safeguards part of the balance in King? Those set a national standard, and all of the samples are processed pursuant to those standards. So there isn't leeway how to process these samples. So how does he set a national standard when he emphasizes some of these restrictions that Maryland law imposes? He didn't relegate it to Maryland law. No, but he was dealing with Maryland law. And, you know, he's probably you know, when you think about Maryland law and how it restricts privacy, and how it insists on probable cause, and how it requires that the sample be destroyed should the person not be prosecuted, or should the person be found not guilty. All of those, to my mind, just fit into the balance, the balance here of dealing with a very, very intrusive interest in privacy. I mean, we're getting there, and we're in a new age and a new phase of being able to not only identify people, but to identify who their relatives were, all their problems, their mental problems, their physical problems. The whole picture is there. And so, you know, that's a very serious intrusion. And I think when he talks about these limitations, he's trying to strike a balance. And he was dealing with Maryland. California is just pretty extreme in the other way. You can arrest people who are joyriding, and you can book them as a felon. And it may turn out that they're convicted of a misdemeanor. You know, we have a different system of law here. So, I mean, that's the way I read it, and he's trying to strike a balance. The Court struck a different balance. And just because Maryland law includes elements that go beyond what's required Why does he emphasize them? Why does he emphasize them? Maryland's law? He didn't emphasize Maryland law. In fact, he used California examples throughout the opinion. And just because Maryland law includes elements that go beyond the Fourth Amendment does not mean that the constitutional bar is set at Maryland's law. The U.S. Supreme Court has repeatedly recognized and made clear that the Fourth Amendment outcome does not vary with the laws of particular States. So a State can provide more protection, and a State can enact limitations. But each of these rights and limitations does not go into the balancing test and affect the Fourth Amendment calculus. Otherwise, the Fourth Amendment would vary from State to State, and that's a proposition that the Supreme Court has rejected. Kennedy, what the State law happens to be like, and what balance it strikes, and how it protects the privacy interests. So, I don't know. No, we have a difference of opinion on that. If we uphold Judge Breyer's decision to deny a preliminary injunction, is there anything left of the case? Would the case go back to the Northern District of California for reformulation of the class and perhaps some kind of a trial on the merits? We think that this case begins and ends with Maryland v. King. There would be nothing left of this case. Well, they could try to narrow it down, couldn't they? I mean, you think that your position is that Maryland, that the Supreme Court's decision in King forecloses any claim that simple arrest, that an arrest that results taking them down to the station, booking them, but then determining no prompt there's the cop, the arresting officer, says, ah, made a mistake. Let them go. DNA is taken. That, is your view that King forecloses any claim by these guys, that they don't have a possible claim? Well, right now, there, for one, is a mismatch between the class, the certified class and the redeemed class. Judge Kaczynski, I think, had a really good point, which was that the class now, in light of King, is overly broad, but they could narrow it down, or they could just do individual as applied and try and set some precedent on an individual basis. But it would be inconsistent with the holding in King to draw the line at charges. So as long as you're taking a – so as long as you're arrested, taken to the station and booked, that's it. Right, because your identification information informs the charging decision. There's never a determination of probable cause by a judicial office. There are a lot of situations where an individual can be arrested, booked, bailed out according to the county bail schedule, and then given a notice to appear at a later date, so there is no finding of judicial finding of probable cause or a charging decision, and yet they are on a bail basis. Well, as I understand the Maryland statute, they could collect it, but they couldn't test it. Correct. And so the court looked at that as a delay, not as a good thing, but as a delay. So it's not that California is premature. It's that Maryland is delayed in its analysis, and the dissent was making that observation as well. And the court said it's – the timing of the analysis goes to the efficacy, not the constitutionality. So where does the probable cause determination take place under the California scheme, if at all? It can happen at a lot of different junctures. Where? Walk me through the process as you – where there is a probable cause determination that's made. Walk me through the process. Well, it could – it could be made. Where – when and where is it made? Somebody is arrested out on the street, let's just say for drugs, dealing in drugs, and taken into the station. Where is the probable cause determination made? After he's booked, it might go to the – within 48 hours, it needs to go to a magistrate for judicial finding of probable cause. That's whether they can continue to maintain – to keep the – that's the process where they need to determine whether or not they can keep the defendant in custody for longer than 48 hours when the charge has not yet been filed, right? Right. But they can also be released prior to that time, and the case can be recharged. So if your – if your case is dismissed, it doesn't mean it's dismissed forever. I mean, if it's discharged, if the – if the district attorney doesn't charge right away, it could be for a whole number of reasons. Is the bottom line on what you're saying is that there's no class of arrestees who could be picked up on technically what would be called a felony, even if everybody would agree it wasn't a serious offense. They are booked. They're never really held in detention other than going through the booking process, and then they're kicked loose. And once they've had the swab taken, then the state is free to go ahead and analyze it and process it as occurred in Maryland. And all of the rationale in Justice Kennedy's opinion about the criminal history and the imposition of conditions of release or revocation of bail, where do those come into play in that category of people? It comes into play. And at the – at the outset, I mean, a felony is a serious offense, is the classic definition of a serious offense. But in the opinion, it is also clear that there is no threshold level of seriousness in particular. Again, you're sort of reading out some of what Justice Kennedy elaborated on, because that is one thing he kept repeating, serious offense. Yes, he did. And he gave examples of it. Right. And some of those examples actually came from California. And they may be, but I'm talking about one that wasn't one of those. There's no burglary. There's no rape. There's no assault and battery. It's just somebody who got picked up on what is a wobbler, for example, and there's no assault or anything like that. And they're kicked loose. The system itself recognizes it wasn't serious. So they kick it out. And that person's DNA is now captured. Fingerprints, we give up fingerprints in lots of contexts. The big difference about DNA, two of them, one is they're building the fingerprint database by arrest. You don't do that. When you send a fingerprint in, you're matching it against a preexisting database. Now they're creating the database. And the fingerprint doesn't carry with it all of the biological information that's associated with the full DNA. And you're saying that California can take that full DNA, hold it in its custody, and for now only look at the junk DNA, but they've got it in their custody, all of the DNA in their custody, and there's no remedy because of Maryland v. King? By law, California can only look at discrete portions of identification DNA. That's it, nothing else. What's wrong then with the proposal by Ms. Haskell recognizing what King does restrict to simply say, go to the Supreme Court decision, it talks about a valid arrest supported by probable cause, and then Ms. Haskell's counsel says, okay, we can draw the line at charges or a judicial determination of probable cause, and therefore, word, you know, free reign under the California statute. What's wrong with that line in terms of interpreting how King applies to this case? Well, that interpretation would not be consistent with King, which recognizes that the identification information, whether it's fingerprints, photographs, or DNA, informs the charging decision. Counsel, what role does Justice Scalia's dissent, again, he was in the conference and you've already said, how would this respond to Judge McEwen's point? He says, make no mistake about it, as an entirely predictable consequence of today's decision, your DNA can be taken and entered into a national DNA base if you are arrested rightly or wrongly, and for whatever reason. So he is saying, hey, they didn't have probable cause, they got it wrong, something they didn't charge, but it can be put in there under the rationale of King. How do we interpret that? The decision, I mean, Justice Scalia made a number of factual errors in that analysis. And there are criteria. The Court announced what the criteria is for taking, analyzing, and keeping a sample. It would cross the line to take a sample from an ordinary citizen. There are valid procedures for analyzing the sample, taking the sample, and expunging the sample. At every juncture, the U.S. Supreme Court recognized and focused on the national import of King. Chief Justice Roberts stayed the Maryland decision in recognition of the fact that it implicates important features of approximately half the States and the Federal Government. Recognizing the important implications of King, Justice Alito said at oral argument it was perhaps the most important case the Court was deciding in decades. In the case itself, it says this holding implicates more than specific Maryland law, and because the Court's holdings and legal determinations were not tethered to the four corners of the Maryland law, there is no basis for Appellant's claim to be constitutional, while California law is not. Thank you. Thank you. You're out of time, Mr. Risher. Would you like to take a minute for rebuttal? Yes, please. So tell me, in part of that one minute you have, I need to see a minute on the clock. Why isn't the best thing we can do here is simply affirm denial of the preliminary injunction, and the case would then be back in the district court where you can reshape the class and make whatever claim you make, and why isn't anything else we say beyond that too much? Because my named plaintiffs, Lillie Haskell, Akash Desai, Reggie Ento, weren't charged with offenses. They are entitled to relief under the rule that I'm proposing. Unfortunately, you brought it as a class, and you are now they are now tied at the And if you had sort of brought it on behalf of them, you might have a claim. But how can we say, how can we say, in light of Mayor and Mrs. King, that the district court here abused its discretion by denying interlocutory relief? This is a the factual record in this case is more than sufficient. It's bigger than it was in King. It's a question of pure law. This Court can say what the law is. The district court will implement that law. Otherwise, we may be up here again in a year or two in precisely the same situation. I don't think that serves anyone's interest. But we'd be up here on a fuller record that hopefully you'd be able to make that trial before the district court. The record we already have is vastly bigger than it was the record in King. I think the rule I propose is a reasonable one. It flows directly from King's holding and reasoning. It accommodates all of the governmental interests that King identified. I don't see that additional facts are necessary to establish that. So I'm asking that the Court decide the issue now, one way or the other, to be honest. Thank you. All right. Thank you. The case is now submitted. We are adjourned.
judges: Kozinski, Pregerson, McKeown, Fisher, Gould, Paez, Tallman, Rawlinson, Smith, Smith, Watford